IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STEVEN R. BLAIR, | ) | 8:07CV295 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CITY OF OMAHA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants Patricia Osier, Jeffrey Morgan, Lawrence Reynard, Morgan Larson, James Skinner, Donald Carey, City of Omaha, Randy Anderson, Kevin Housh, Donald Truckenbrod, Michael Scott, and Jason Christensen's (collectively "City Defendants") Motion for Summary Judgment.[1] (Filing No. 235.)  As set forth below, the City Defendants' Motion is granted in part and denied in part.

## I.  BACKGROUND

Plaintiff Steven R. Blair ("Blair") filed his original Complaint in this matter on August 3, 2007.  (Filing No. 1.)  After several lengthy extensions of time, Blair filed an Amended Complaint and the court permitted this matter to proceed to service. (Filing Nos. 15, 16 and 17.)  In his Amended Complaint, Blair named 27 Defendants: the City of Omaha, Nebraska; Douglas County, Nebraska; and 25 individuals. (Filing No. 16.)

---

[1]Also pending before the court is Defendant Lori Anzaldo's Motion for Summary Judgment (filing no. 267) and Plaintiff's Objection to Anzaldo's Motion to Extend Deadlines (filing no. 266).  For clarity, the court will address these Motions in a separate Memorandum and Order.

Since service of process, the court has resolved numerous motions and dismissed Blair's claims against 14 of the 27 Defendants. (Filing Nos. 110, 167, 169, and 249.) On October 26, 2009, the court issued a Memorandum and Order that addressed 24 pending Motions. (Filing No. 249.) In that Order, the court limited discovery in this matter to the issue of qualified immunity only and resolved all of the pending Motions except for the City Defendants' Motion for Summary Judgment. (Filing No. 235.) The court also granted Blair until December 15, 2009, to respond to the City Defendants' Motion for Summary Judgment. (*Id.*)

On December 15, 2009, Blair filed a Brief in Opposition to the City Defendants' Motion for Summary Judgment along with an Index of Evidence in Support. (Filing Nos. 258 and 260.) The City Defendants replied with an additional Brief in Support of their Motion for Summary Judgment. (Filing No. 269.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

The City Defendants have submitted a statement of material facts in accordance with the court's Local Rules. Blair has submitted a Brief and an Index of Evidence

in response.  This matter is therefore deemed fully submitted and the court adopts the following relevant undisputed facts.

## II.  RELEVANT UNDISPUTED FACTS

**A.     Parties**

1.      Blair is a resident of Omaha, Nebraska.  (*See* Docket Sheet.)

2.      Defendants Randy Anderson (also known as Randy Szemplenski) ("Szemplenski"), Kevin Housh ("Housh"), Donald Truckenbrod ("Truckenbrod"), Michael Scott ("Scott"), Jason Christensen ("Christensen"), Lawrence Reynard ("Reynard") and Morgan Larson ("Larson") are all police officers employed by the City of Omaha.  (Filing No. 16; Filing No. 236-2, Attach. 1 at CM/ECF p. 1; Filing No. 236-3, Attach. 2 at CM/ECF p. 1; 236-4, Attach. 3 at CM/ECF p. 1; Filing No. 236-5, Attach. 4 at CM/ECF p. 1; Filing No. 236-6, Attach. 5 at CM/ECF p. 1.)

3.      Jeffrey Morgan ("Morgan") was employed as a police officer with the City of Omaha from 1985 through 2008.  (Filing No. 236-7, Attach. 6 at CM/ECF p. 1.)

4.      Patricia Osier ("Osier") was employed as a Senior Crime Lab Technician with the City of Omaha in 1997.  Osier retired in September 2007.  (Filing No 236-8, Attach. 7 at CM/ECF p. 1.)

5.      James N. Skinner ("Skinner") was employed as Chief of the Omaha Police Department ("OPD") from November 9, 1989, through August 20, 1997.  (Filing No. 238-2, Attach. 1 at CM/ECF p. 1.)

6.      Donald L. Carey ("Carey") was employed as Chief of the OPD from August 1998 through June 2003.  (Filing No. 236-13, Attach. 12 at CM/ECF p. 1.)

**B.      Blair's Arrest**

7.      On May 12, 1997, police officers Housh, Truckenbrod, Scott and Christensen went to 2035 Maple Street, in Omaha, Nebraska.

8.      Upon arriving at 2035 Maple Street, the officers found the front door open.  Blair appeared in the doorway and identified himself.  The officers asked him to step down from the doorway, patted him down and handcuffed him.

9.      The officers then became aware of the presence of other people in the house.  Scott, Christensen, and Truckenbrod entered the house through the open front door.

10.      Upon entering the house the officers observed three men in the living room of the house.  The officers also saw a shotgun in plain view leaning against the wall near the front door.  The officers unloaded the shotgun and secured it in the trunk of a police cruiser.

11.      The three men in the living room were staring nervously at a large duffel bag in the middle of the room.  Because of this behavior, the officers moved the bag beyond the men's reach.  Christensen then opened the bag and found a loaded rifle. He removed the rifle and secured it in a police cruiser.

12.      After securing the rifle, Scott remained with the three men in the living room, while Truckenbrod and Christensen completed a brief walk-through of the rest of the house.

13.     Eventually, Plaintiff was arrested for the assault and kidnaping of his ex-girlfriend Patty Dory ("Dory") and taken from the scene to the OPD Central Station. There, Housh turned Blair over to other police personnel.

(Filing No. 236-2, Attach. 1; Filing No. 236-4, Attach. 3; Filing No. 236-6, Attach. 5; Filing No. 236-5, Attach. 4.)

## C.    Blair's Trial

14.     During Blair's trial, several witnesses testified including officers Housh, Szemplenski and Christensen.

15.     Housh testified that the alleged assault and kidnaping was first reported between 5:30 and 5:45 p.m.  (Filing No. 260 at CM/ECF p. 36; Filing No. 236-2, Attach. 1 at CM/ECF p. 4.)

16.     Szemplenski also testified that uniformed officers first responded to the original call at 5:45 p.m.  (Filing No. 260 at CM/ECF p. 26; Filing No. 236-3, Attach. 2 at CM/ECF pp. 4-5.)

17.     Christensen originally testified that he arrived at Blair's residence "around 5:00 p.m."  However, he later stated that the time in his report, 8:00 p.m., would be the correct time.  (Filing No. 260 at CM/ECF p. 39.) Christensen's Uniform Patrol Bureau Daily Sheet indicates that the original report occurred at "1730" (5:30 p.m.) and that he was dispatched to Blair's residence at 2000 hours (8:00 p.m.). (Filing No. 236-5, Attach. 4 at CM/ECF p. 8.)

18.     Housh's Uniform Crime Report states that the incident was reported at "1730-1745," (5:30-5:45 p.m.).  In addition, it provides that Blair was booked at "1800" (6:00 p.m.).   (Filing No. 236-2, Attach. 1 at CM/ECF pp. 6-7.)

19.     OPD's Supplementary Report of the incident, prepared by Lisa Rankin, also states that the original report occurred at "1745" (5:45 p.m.). (Filing No. 236-3, Attach. 2 at CM/ECF pp. 6-20.)

20.     OPD officers are trained regarding the "investigation of crimes, preparation of reports, . . . handling of witnesses and evidence, . . . legal limits on police activities, . . . testimony in court and . . . necessity to be truthful and accurate." (Filing No. 238-2, Attach. 1 at CM/ECF p. 2.)

21.     However, phone records show that Dory first called 911 to report the incident at 1832 (6:32 p.m.). (Filing No. 236-2, Attach. 1 at CM/ECF p. 4.)

22.     Despite this time discrepancy, Blair was convicted of kidnaping, use of a deadly weapon to commit a felony and terroristic threats and subsequently sentenced on June 16, 1998. *See State v. Blair*, 707 N.W.2d 8, 11 (Neb. Ct. App. 2005).

## D.     Blair's First Federal Lawsuit

23.     On April 3, 2001, Blair filed his first lawsuit in this court relating to his May 12, 1997, arrest. Blair filed this suit against Szemplenski, Truckenbrod, Housh and Christensen alleging that they violated his Fourth Amendment rights by arresting him and searching his residence without probable cause. (Case No. 4:01CV3065, Filing Nos. 1 and 6; Case No. 4:04CV3229, Filing No. 31 at CM/ECF pp. 6-10.) Specifically, Blair alleged that he was arrested before Dory ever called 911 to report her allegations. (Case No. 4:01CV3065, Filing No. 6; Case No. 4:04CV3229, Filing No. 31 at CM/ECF pp. 6-10.)

24.     On June 26, 2001, United States Magistrate Judge Kathleen A. Jadzemis conducted an initial review of Blair's April 3, 2001, complaint and concluded that his

claims were barred by the "holding of *Heck v. Humphrey.*"[2]  (Case No. 4:01CV3065, Filing No. 7; Case No. 4:04CV3229, Filing No. 31 at CM/ECF p. 22.)   However, because Judge Jadzemis was uncertain about whether Blair's state conviction had been invalidated, she gave him leave to file an amended complaint.  (*Id.*)

25.     Blair could not establish that his conviction had been invalidated and the court dismissed his case on November 16, 2001.  (Case No. 4:01CV3065, Filing Nos. 10 and 11.)

26.     On December 11, 2001, Blair appealed to the Eighth Circuit Court of Appeals.  (Case No. 4:01CV3065, Filing No. 12.)  The Eighth Circuit affirmed the court's decision on July 7, 2002.  (Case No. 4:01CV3065, Filing No. 24.)

## E.     Blair's State Court Post-Conviction Proceedings

27.     On August 11, 2003, the Nebraska District Court set aside Blair's conviction on the basis of ineffective assistance of trial counsel and ordered a new trial.  *State v. Blair*, 707 N.W.2d 8, 13 (Neb. Ct. App. 2005).

28.     The court specifically concluded that Blair's defense counsel was ineffective in failing to produce witnesses at Blair's trial.  *Id*.

## F.     Blair's Second Federal Lawsuit

––––––––––––––––––––

[2]As set forth by the Supreme Court in *Preiser v. Rodriquez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994), if success on the merits of a civil rights claim would necessarily implicate the validity of a conviction or continued confinement of a convicted state prisoner, the civil rights claim must be preceded by a favorable outcome in habeas corpus or similar proceedings in a state or federal forum.  Absent such a favorable disposition of the charges or conviction, a plaintiff may not use 42 U.S.C. § 1983 to cast doubt on the legality of his conviction or confinement.  *See Heck*, 512 U.S. at 486-87.

29.     On August 25, 2004, Blair filed his second complaint in this court relating to his May 12, 1997, arrest.  (Case No. 4:04CV3229, Filing No. 1.)  Blair filed this Complaint against the same police officers as his first federal case, Case No. 4:01CV3065, but also added additional defendants.  (*Id.*)

30.     On July 26, 2006, United States District Judge Richard Kopf stayed Blair's second case because he had not yet been retried, and therefore, had not obtained a final favorable outcome in his criminal case as contemplated by *Heck*. (Case No. 4:04CV3229, Filing No. 57 at CM/ECF p. 7.)  After entering the stay, the parties and the court agreed to close the case provided that Blair could reopen it upon the completion of his criminal proceedings in state court.  (Case No. 4:04CV3229, Filing No. 59 at CM/ECF p. 2.)

## G.     Dismissal of the Charges Against Blair and His Current Federal Lawsuit

31.     Ultimately, the Douglas County Attorney decided to dismiss the charges against Blair instead of proceeding with a new trial.  The County made this decision for several reasons, including the fact that Blair had already served approximately eight years in jail and it was unlikely that a conviction would result in a substantial amount of additional incarceration.  (Filing No. 236-14, Attach. 13 at CM/ECF pp. 3-4.)

32.     On August 3, 2007, Blair filed his third, and current, lawsuit in this court relating to his May 12, 1997, arrest.  (Filing No. 1.)  Although Blair did not move to reopen his second case, Case No. 4:04CV3229, the court permitted his claims to proceed as a new case in accordance with the court's prior stay order.  (Filing No. 15.)

## III.  CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Blair's Complaint alleges seven separate causes of action against the City Defendants. (Filing No. 16.) The City Defendants argue they are entitled to summary judgment on each of these claims. (Filing No. 237.) For the reasons discussed below, the court agrees in part.

## A.    Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B.    Fourth Amendment Claims

The City Defendants argue that Blair's unlawful search and seizure and unlawful arrest claims (collectively the "Fourth Amendment Claims) are barred by

the statute of limitations.  Alternatively, the City Defendants argue that the officers' actions were reasonable and appropriate under the Fourth Amendment and they are entitled to qualified immunity.  As set forth below, the court concludes that Blair's Fourth Amendment claims are not barred by the statue of limitations.  Further, there are material questions of fact about whether the officers had probable cause to arrest Blair or search his residence.

   1.    *Statute of Limitations*

      Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983.  (Filing No. 81.) "The applicable state law statute of limitations governs § 1983 claims."  *Baker v. Chisom*, 501 F.3d 920, 922 (8th Cir. 2007) (affirming dismissal).  In Nebraska, there is a four-year statute of limitations that applies to suits brought pursuant to 42 U.S.C. § 1983.  Neb. Rev. Stat. § 25-207; *See Poor Bear v. Nesbitt*, 300 F. Supp. 2d 904, 912-13 (D. Neb. 2004) (affirming dismissal of § 1983 claim that alleged, among other things, an improper arrest because the four-year statute of limitations found in Neb. Rev. Stat. § 25-207 had run) (quoting *Bauers v. City of Lincoln*, 514 N.W.2d 625, 634 (Neb. 1994) which relied upon *Bridgeman v. Nebraska State Pen*, 849 F.2d 1076, 1077 (8th Cir. 1988)).

      As discussed above, Blair's arrest and search of his residence occurred on May 12, 1997.  Thus, Blair was required to file his Fourth Amendment claims by May 12, 2001.  Because Blair filed this case on August 3, 2007 (filing no. 1.), his Fourth Amendment claims are barred unless the statute of limitations is somehow tolled by the particularized circumstances of this case.  Blair argues that statute of limitations should be tolled in this case because he originally filed his Fourth Amendment claims on April 3, 2001 (*see* case no. 4:01CV3065, filing nos. 1 and 6; case no. 4:04CV3229, filing no. 31 at CM/ECF p. 6-10), but was prevented from pursuing them because the court determined that they were barred under the principles of *Heck*. Stated another way, Blair argues that he is entitled to equitable tolling.

10

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Riddle v. Kemna*, 523 F.3d 850, 857 (8th Cir. 2008) (quoting *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006)); *see also Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (addressing equitable tolling of a § 1983 claim). In this case, Blair timely filed his first lawsuit on April 3, 2001, alleging search and seizure claims related to his May 12, 1997, arrest. However, his complaint was dismissed because the court concluded his claims were barred by *Heck*. Blair then appealed this decision, but the Eighth Circuit affirmed. (Case No. 4:01CV3065, Filing Nos. 12 and 24.)

After his conviction was set aside, Blair filed a second lawsuit in this court re-alleging his Fourth Amendment claims. However, because Blair had not yet been retried, and therefore had not obtained a final favorable outcome in his criminal case as contemplated by *Heck,* the court elected to stay the case. (Case No. 4:04CV3229, Filing No. 57 at CM/ECF p. 7.) Ultimately, the parties and the court agreed to close the case so long as Blair could reopen it upon the completion of his criminal proceedings in state court. (Case No. 4:04CV3229, Filing No. 59 at CM/ECF p. 2.) Blair has since established that his criminal proceedings are over and his current Complaint seeks to litigate the Fourth Amendment claims he first alleged in Case No. 4:01CV3065, and re-alleged in Case No 4:04CV3229.

Overall, it is clear that Blair has been pursuing his rights diligently. In addition, the court has prevented him from resolving his claims as it has twice determined that they were barred by *Heck*. In light of this, the court finds that the statute of limitations was tolled with respect to Blair's Fourth Amendment claims against the Defendants he sued in his first lawsuit: Housh, Truckenbrod, Christensen and Scott.[3]

---

[3]To the extent that Blair alleges his Forth Amendment claims against any other Defendants, his claims are not tolled. Blair's first case, Case No. 4:01CV3065, only alleged Fourth Amendment claims against Housh, Truckenbrod, Christensen and

2.   *Fourth Amendment*

Because the statute of limitations was tolled with respect to Blair's Fourth Amendment claims against Housh, Truckenbrod, Christensen and Scott, the court will now explore the merits of those claims.   "The Fourth Amendment prohibits a warrantless entry of a home by law enforcement officers unless the circumstances are within a reasonableness exception to the warrant requirement." *U.S. v. Clarke*, 564 F.3d 949, 958-59 (8th Cir. 2009).   However, the Eighth Circuit has recognized a "reasonableness exception to the warrant requirement which allows a non-consensual, warrantless search of a home if the search is supported by probable cause and exigent circumstances." *Id.* at 959; *see also United States v. Hogan*, 539 F.3d 916, 922 (8th Cir. 2008).   When examining if a search is reasonable, courts consider "all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry v. Ohio*, 392 U.S. 1, 19 (1968).

In addition, "[i]t is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986).   "An officer has probable cause to arrest a suspect without a warrant if the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).   The fact that an arrested person is later found innocent is not material.   *Arnott*, 995 F.2d at 124.

Here, Housh, Truckenbrod, Christensen and Scott did not have a warrant to arrest Blair or search his home.   However, they argue they had probable cause because they relied in good faith on Dory's report that Blair had held her captive at

---

Scott.   (*See* Filing No. 4:04CV3229, Filing No. 31 at CM/ECF pp. 3-11.)

gunpoint and assaulted her.  (Filing No. 237 at CM/ECF pp. 19-20.)  The record indicates that Dory called 911 to report these allegations on May 12, 1997, at 6:32 p.m.  (Filing No. 16; Filing No. 236-15, Attach. 14 at CM/ECF p. 1.)

In contrast, Blair argues that he was arrested before Dory ever called 911, and therefore, the officers did not have probable cause to arrest him or search his home. (Filing No. 258 at CM/ECF pp. 8-13.)  Blair uses several sources of evidence to support this argument.  First, Blair submitted sworn affidavits from two individuals that witnessed the officers at his residence at approximately 5:00 p.m. on May 12, 1997, and a sworn affidavit from his mother stating that she received a call at 5:30 on May 12, 1997, informing her that her son had been arrested.  (Filing No. 260 at CM/ECF pp. 4-8, 14-15.)

Second, Blair points to the officers' police reports, which indicate that the original report occurred on May 12, 1997, between 5:30 and 5:45 p.m. and that Blair was booked on May 12, 1997, at 6:00 p.m.  (Filing No. 236-3, Attach. 2 at CM/ECF pp. 6-20; Filing No. 236-5, Attach. 4 at CM/ECF p. 6; Filing No. 236-2, Attach. 1 at CM/ECF p. 7.)

Third, Blair points to the trial testimony of Housh, Szemplenski and Christensen.  These officers all testified that they arrived at Blair's residence between 5:00 and 5:45 p.m. (Filing No. 236-2, Attach. 1 at CM/ECF pp. 4; Filing No. 236-3, Attach. 2 at CM/ECF pp. 4-5; Filing No. 260 at CM/ECF p. 26, 36, 39.)  Overall, this evidence supports Blair's argument that he was arrested well before Dory's 6:32 p.m. call to 911.

The City Defendants argue that the time discrepancies in the officers' reports were mistakes and that the officers accidentally based their trial testimony on these mistakes.  (Filing No. 237 at CM/ECF p. 27; Filing No. 236-2, Attach. 1 at CM/ECF pp. 1-4; Filing No. 236-3, Attach. 2 at CM/ECF pp. 3-5.)  Although this argument may have merit, a genuine issue of material fact remains as to whether the officers

were aware of Dory's report at the time of Blair's arrest.  The parties have presented two vastly different stories as to when Blair was arrested and it is not the court's place to decide who is telling the truth at this stage of the proceedings.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations."). Viewing the facts in a light most favorable to Blair, a jury could find that he suffered a constitutional violation by being subjected to a search and arrest without probable cause.[4]

### 3.    *Qualified Immunity*

The City Defendants also summarily argue that they are entitled to qualified immunity on Blair's Fourth Amendment claims.  (Filing No. 237 at CM/ECF pp. 40-43.)  "Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.'"  *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)).

As discussed above, a question of fact remains as to whether the officers had probable cause to arrest Blair and search his home.  In addition, the officers should have known that arresting Blair and searching his home without probable cause would violate his clearly established rights.  *See, e.g.*, *Chandler v. Miller*, 520 U.S. 305, 308 (1997) (reiterating that warrantless seizures generally violate the Fourth Amendment absent an individualized reasonable suspicion determination); *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986) ("It is well established that a warrantless arrest without probable cause violates an individual's constitutional

---

[4]There is nothing else before the court showing that the officers had any other basis for probable cause, or that any exigent circumstances existed to arrest Blair.

rights under the Fourth and Fourteenth Amendments.").  Thus, the officers are not entitled to qualified immunity on Blair's Fourth Amendment claims.

**C.    State Law Claims**

In addition to his Fourth Amendment claims, Blair has alleged several state law claims against the City Defendants including false arrest, false imprisonment, malicious prosecution, abuse of process and loss of consortium.  As set forth below, the City Defendants are entitled to summary judgment on each of these claims.

*1.    False Arrest, False Imprisonment, Malicious Prosecution and Abuse of Process*

The Nebraska Political Subdivisions Tort Claims Act ("NPSTCA"), Neb. Rev. Stat. §§ 13-901 to 13-926, generally allows political subdivisions to be held liable for tort claims.  Neb. Rev. Stat. §§ 13-902, 13-903(3).   In addition, the NPSTCA is the sole method to assert a tort claim against a political subdivision under  Nebraska law. Neb. Rev. Stat. § 13-902.

However, the NPSTCA limits the types of actions that may be brought against a political subdivision and its employees in their official capacity.  In particular, the NPSTCA does not allow a political subdivision or its employees to be sued "for any claims arising out of . . . false arrest, false imprisonment, malicious prosecution, [or] abuse of process . . . ."  Neb. Rev. Stat. § 13-910(7).  Accordingly, the court finds the NPSTCA bars Blair's state law claims for false imprisonment, malicious prosecution and abuse of process against the City Defendants in their official capacities.

Blair also asserts his false arrest, false imprisonment, malicious prosecution, and abuse of process against the City Defendants in their individual capacities. Nebraska courts have consistently held that a political subdivision's employee cannot be sued individually if the alleged tortious conduct occurred while the employee acted

within the scope of the employee's employment. *Bohl v. Buffalo County*, 557 N.W.2d 668, 673 (Neb. 1997); *Kuchar v. Krings*, 540 N.W.2d 582, 585 (Neb. 1995); *Edington v. City of Omaha*, Nos. A-98-205 & A-98-206, 1999 WL 703294, at *4-*5 (Neb. Ct. App. Sept. 7, 1999).

Here, Blair does not allege that the employees were acting outside the scope of their employment. In fact, Blair's Amended Complaint specifically states that the City Defendants were acting either under color of law or within the scope of their employment, or both. (Filing No. 16 at CM/ECF pp. 2-3, 6, 7.) Accordingly, Blair's false arrest, false imprisonment, malicious prosecution and abuse of process claims against the City Defendants in their individual capacities must also be dismissed.

### 2.   Loss of Consortium

Blair also alleges that he has been deprived of the consortium of his family members. (*Id.* at CM/ECF p. 18.) Blair is confused about his loss of consortium claim. In Nebraska, loss of consortium is a claim that accrues to an injured person's spouse and not to the injured person himself. *Simms v. Vicorp Restaurants, Inc.*, 725 N.W.2d 406, 409 (Neb. 2006) ("[W]hen a married person is injured, two causes of action arise: one accrues to the injured person for the injuries suffered directly by him or her, and the other accrues to the injured person's spouse for damages suffered as a result of the loss of the injured person's services, society, companionship, and sexual relations (loss of consortium)."). Because Blair only alleges claims against the City Defendants for injuries to himself, his loss of consortium claim lacks merit and must be dismissed.

### D.   Claims Against Skinner, Carey and the City of Omaha

In addition to his Fourth Amendment and state law claims, Blair also alleges § 1983 claims against the City of Omaha and former Omaha Police Chiefs Skinner and Carey for failing to properly train their officers. Blair sues Skinner and Carey in

16

both their individual and official capacities. The City Defendants argue that these claims should be dismissed because they are deficient. (Filing No. 237 at CM/ECF pp. 43-48.) The court agrees.

### 1.   Official Capacity Claims Against Skinner and Carey

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Thus, to sustain the action against Skinner and Carey in their official capacities, Blair must prove that the City "itself caused the constitutional violation at issue." *Id*. (quotation omitted).  As a municipal defendant, the City of Omaha may only be liable under § 1983 if its "policy" or "custom" caused a violation of Blair's constitutional rights. *Doe By & Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy.  *Jane Doe A By & Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

To establish the existence of a governmental custom, a plaintiff must prove:

1)   The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)   Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)   That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

17

*Jane Doe*, 901 F.2d at 646.

Here, Blair generally alleges that Skinner and Carey "had a duty to properly train, supervise, and discipline" officers, but instead they let them "run amuck." (Filing No. 16 at CM/ECF p. 7.)  He also alleges that Skinner and Carey were aware of his "unlawful arrest," but they refused to do anything about it.  (*Id*.)  However, Blair does not allege that the City of Omaha has a custom of failing to train, supervise or discipline its officers, nor does Blair allege that any custom was the moving force behind his injuries.  Consequently, Blair has failed to properly allege an official capacity claim against Skinner or Carey under the *Jane Doe* standard and his official capacity claims against them must be dismissed.

> 2.   *City of Omaha*

Beyond Blair's official capacity claims against Skinner and Carey, Blair's Amended Complaint contains very few allegations against the City of Omaha itself. For example, Blair claims that the City of Omaha "[set] his bond at an amount far above what the law requires" and is "liable for the actions of [its] officers."  (Filing No. 16 at CM/ECF pp. 6, 16.)  The court finds that these allegations also fail specify a City policy or custom that violated Blair's constitutional rights. Therefore, Blair's claims against the City of Omaha also must be dismissed.

> 3.   *Individual Capacity Claims Against Skinner and Carey*

As discussed above, Blair also alleges his claims against Skinner and Carey in their individual capacities.  The Eighth Circuit has held that a supervising officer can be liable for an junior officer's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'"  *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (quoting *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994)); *see also Wever v. Lincoln County*, 388 F.3d 601, 606-07 (8th Cir. 2004).

18

However, a supervising officer will not be individually liable for an otherwise unlawful act if he is entitled to qualified immunity. Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted).

As discussed above, Blair's allegations against Skinner and Carey are not based on direct participation, but rather relate to an alleged failure to "properly train, supervise, and discipline" officers. (Filing No. 16 at CM/ECF p. 7.) However, "a supervisory officer is entitled to qualified immunity for a § 1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack

19

thereof) was likely to result in the specific constitutional violation at issue." *Parish v. Ball*, Nos. 08-3517, 08-3518, 2010 WL 445736, at *8 (8th Cir. Feb. 10, 2010); *see also Gold v. City of Miami*, 121 F.3d 1442, 1447 (11th Cir. 1997) (noting that a supervisor is entitled to qualified immunity unless "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate" (quotation omitted)).

Even when the record is viewed in a light most favorable to Blair, it does not suggest that Skinner or Carey would have known that their training programs and policies would likely result in Blair's alleged constitutional violations. In fact, the record indicates that the OPD's training program includes "intensive" training on the "investigation of crimes, preparation of reports, . . . handling of witnesses and evidence, . . . legal limits on police activities, . . . testimony in court and . . . necessity to be truthful and accurate." (Filing No. 238-2, Attach. 1 at CM/ECF pp. 1-2.) Blair has presented no evidence to show that this training program or OPD's policies are inadequate. In light of these findings, Skinner and Carey are entitled to qualified immunity for Blair's claims against them in their individual capacities.

E.    **Conspiracy Claims**

Last, Blair alleges Osier and Morgan conspired with other state actors to violate his rights. Blair brings these conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985.

In order to establish a conspiracy claim under 42 U.S.C. § 1983, Blair must prove "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). In order to establish a conspiracy claim under 42 U.S.C. § 1985, Blair must prove: (1) the defendants

conspired, (2) with the intent to deprive him of a constitutional right, (3) an act in furtherance of the conspiracy, and (4) an injury to his person or property, or a deprivation of any right or privilege of a citizen of the United States. *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005).

"A conspiracy claim requires evidence of specific facts that show a 'meeting of minds' among conspirators." *Id.* (quoting *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988)).  Because a corporation and its agents are a single entity in the eyes of the law, a corporation cannot conspire with itself. *Cross v. General Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir. 1983).  The Eighth Circuit has extended this concept to government entities. *See Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985); *Richmond v. Bd. of Regents*, 957 F.2d 595, 598 (8th Cir. 1992).  However, an exception arises where individual defendants "act outside the scope of their employment for personal reasons." *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987).

Here, Blair alleges Osier conspired with "other state actors" to manufacture false evidence and Morgan conspired "with other state actors" to testify falsely.[5] (Filing No. 16 at CM/ECF pp. 12-16.)  Blair does not identify who the "other state actors" are, nor does he allege that Osier and Morgan were acting outside of the scope of their employment.  Rather, Blair alleges that Osier and Morgan acted under color of law at all times. (*Id.* at CM/ECF p. 3.)  Moreover, Blair's Amended Complaint and Brief are replete with speculation and conclusory statements regarding a conspiracy, but nowhere does he allege any facts to establish the necessary "meeting of the minds" between these Defendants and a person not employed by the City of Omaha. Because Blair's evidence and claims show only that the alleged conspirators were employed by the same entity, and because there is no allegation or reason to believe

---

[5]Blair also alleges Paul Koltz ("Koltz") conspired to manufacture false evidence.  (Filing No. 16 at CM/ECF p. 12.)  However, because Blair failed to serve Koltz, Blair's claims against Koltz were dismissed on April 10, 2009.  (Filing No. 167.)

that the alleged conspirators were acting outside the scope of their employment, Blair cannot establish the existence of a conspiracy—a single entity cannot conspire with itself.  In light of these findings, the court finds that Osier and Morgan are entitled to summary judgment on Blair's conspiracy claims.

In sum, the City Defendants' Motion for Summary Judgment is granted in part and denied in part.  Blair's only remaining claims are his Fourth Amendment Claims against Housh, Truckenbrod, Scott and Christensen.  The court will enter a separate progression order progressing this matter to trial.

IT IS THEREFORE ORDERED that:

1.     The City Defendants' Motion for Summary Judgment (filing no. 235) is granted in part and denied in part.

2.     Blair's Claims against Patricia Osier, Jeffrey Morgan, Lawrence Reynard, Morgan Larson, James Skinner, Donald Carey, City of Omaha, and Randy Szemplenski are dismissed with prejudice.

3.     A separate order will be entered progressing this matter to trial.

DATED this 3rd day of March, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.